# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF ALABAMA

In the Matter of the Seizure of
$255,097.00 in United States Currency

APPLICATION AND AFFIDAVIT
FOR SEIZURE WARRANT

CASE NUMBER: 2:18mj253-SRW

**I, TYLER B. DELASHAW, being duly sworn, depose and say:**

I am a Task Force Officer with the Drug Enforcement Administration (DEA), and have reason to believe that there is now certain property, namely:

$255,097.00 in United States currency,

which is subject to seizure and forfeiture to the United States pursuant to Title 18, United States Code, Section 981(b), by Title 21, United States Code, Section 881(b), and Title 21, United States Code, Section 853(f), as property which constitutes or is derived from proceeds traceable to violations of Title 21, United States Code, Sections 841 and 846.

Continued on the attached sheet and made a part hereof.    **X** Yes    __ No

_____
**Signature of Affiant**

Sworn to before me, and subscribed in my presence

November 16, 2018
**Date**

at    Montgomery, Alabama
**City and State**

SUSAN RUSS WALKER
Chief United States Magistrate Judge
**Name and Title of Judicial Officer**

_____
**Signature of Judicial Officer**

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA

IN THE MATTER OF THE SEIZURE OF:
$255,097.00 in United States Currency

Case: 2:18mj253SRW

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION FOR SEIZURE WARRANT

1. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2. As a part of my official duties, I investigate criminal violations of federal narcotic laws, including, but not limited to, Title 21, United States Code, Sections 841(a)(1), Possession with the Intent to Distribute and Distribution of Controlled Substances; 843 (b), Use of a Communications Facility to Commit a Controlled Substance Felony; 846, Conspiracy to Possess with the Intent to Distribute and Distribute Controlled Substances; 848, Continuing Criminal Enterprise; and Title 18, United States Code, Sections 1952, Interstate Travel in Aid of Racketeering (ITAR); and 1956, Laundering of Monetary Instruments.

3. Your affiant has approximately nine years of law enforcement experience and is deputized with the Drug Enforcement Administration (DEA) as a Task Force Officer (TFO) for almost two years. I am currently assigned to the New Orleans Field Division (NOFD), Montgomery Resident Office (MRO).

4. Your affiant has received specialized training in the enforcement of federal drug laws, with an emphasis on drug trafficking and drug organizations, and during my employment

1

your affiant has been involved in investigations that involved narcotics trafficking offenses and activities. Your affiant has assisted in seizing large quantities of currency and assets derived from narcotic proceeds in numerous investigations

5. Your affiant's training and experience also includes: the various means and methods by which drug traffickers import and distribute drugs; their use of cellular telephones and calling cards to facilitate drug activity, and their use of numerical codes and code words to conduct drug transactions. Your affiant is also familiar with the ways that drug traffickers conceal, convert, transmit, and transport their drug proceeds, including but not limited to, the use of carriers to transport currency and proceeds, and the use of third parties to purchase or hold title to assets.

6. The facts sets forth in this affidavit are based upon my personal observations, statements of Sergeant Caleb Calhoun (Sgt Calhoun) of the Chambers County, Alabama Sheriff's Office (CCSO), and a review of Sgt Calhoun's body camera recording of the events. All inferences drawn from the facts are based upon my training and experience as set forth herein.

## FACTS OF INVESTIGATION

7. On November 9, 2018 at approximately 8:00 p.m., Sgt Calhoun performed a traffic stop on a white 2008 Ford F-350 utility truck traveling southbound on Interstate I-85 near mile marker 70 in Chambers County, Alabama. The traffic stop was initiated due to the vehicle not having an illuminating license plate light, and failure to signal a lane change. The vehicle bore Alabama license plate number 5540AD0 and was occupied only by the driver. During the stop, the driver of the vehicle provided Sgt Calhoun a Texas Driver's License bearing number 14801881. The Texas driver's license identified the driver as Cruz Trenado. Utilizing various law enforcement databases, Sgt Calhoun verified the vehicle's registered owner was Trenado. Further, Sgt Calhoun learned the license plate was registered to a Decatur, Alabama address.

2

7. During the stop, when asked about his travel plans, Trenado told Sgt Calhoun he was visiting a relative in Alabama and was on his way back to Texas to see his children. Trenado maintained while he previously lived in Alabama, he relocated to Texas a few years earlier. Trenado also advised he was traveling from Decatur, Alabama to Texas. Due to the location of the traffic stop, Sgt Calhoun asked Trenado if he traveled from Decatur, Georgia or Decatur, Alabama. Trenado responded he was traveling from "Decatur, Alabama." When asked how long he had been traveling, Trenado stated he "just barely hopped on."

8. While checking the vehicle's registration and Trenado's driver's license, Sgt Calhoun learned a license plate reader located in Brownsville, Texas indicated the vehicle had passed it on November 3, 2018 at 11:51 a.m. A second license plate reader indicated that the vehicle passed it on November 4, 2018 at 7:50 p.m. traveling northbound on Interstate I-85 in Georgia.

9. Sgt Calhoun asked Trenado when was the last time he had traveled to Texas. Trenado replied "three or four months." Trenado also denied that his vehicle had been to Mexico recently. Sgt Calhoun then told Trenado his truck had been "hit" crossing the border to Mexico. Trenado responded "he only crossed in his other vehicle." Sgt Calhoun asked Trendao if he crossed in Brownsville, Texas. Trenado replied "he crossed through Brownsville when seeing his wife's mother." Sgt Calhoun then asked whether he had crossed into Mexico at Brownsville over the last month. Trenado replied "no," then stated, he had not been to Mexico this month, but he did go last month. When further clarification was sought, Trenado stated his last visit to Mexico was six months ago.

10. Thereafter, Sgt Calhoun asked Trenado for consent to search the vehicle. Trenado gave consent to search the vehicle and told Sgt Calhoun a gun was located in the front seat, for

3

which he did not have a permit. Sgt Calhoun asked Trenado if anything was located in the vehicle that did not belong to him. Trenando replied "no."

11. During the search, Sgt Calhoun located a blue cooler in the passenger floorboard. The cooler contained two clear cellphone wrapped bundles of United States Currency. When questioned concerning the money, Trenado stated he had never seen it and that he did not know how much it was. Sgt Calhoun asked if additional cash was located in the vehicle. Trenado initially stated that there was not, but then stated that there was another bundle of $10,000.00 in U.S. currency in the same cooler. When asked how he obtained the money, Trenado maintained he had won it in cockfight.

12. Sgt Calhoun told Trenado he was going to conduct an open air search of the vehicle with his narcotic detecting canine partner "Ice."[1] Subsequently, Ice alerted on the passenger side door, the side of the vehicle in which the cooler containing the currency was located, as well as the vehicle's utility bed which had locked utility storage compartments. At Sgt Calhoun's request, Trenado relinquished the keys to the compartments. A black Husky tool bag wrapped in a yellow tarp was discovered inside the utility storage compartment on the driver's side of the vehicle. Sgt Calhoun opened the bag and found twenty five (25) green cellophane wrapped bundles of United States Currency and one (1) clear cellophane wrapped bundle of United States Currency similar to the bundles found inside the cooler. When asked about the bag, Trenado claimed he had never seen it. A further search of the vehicle revealed a Glock 17 9mm semi-automatic handgun, a high capacity drum magazine, and extended magazines for the handgun.

---

[1] K-9 Ice is a six (6) year old Belgian Malinois and has been with the Chambers County Sheriff's Office for five (5) years. K-9 Ice is trained to detect methamphetamine, heroin, cocaine and marijuana. SGT Calhoun and K-9 Ice are current on all their certifications and have worked together for 2 years. American Working Dog Association

4

13.     Sgt Calhoun placed Trenado under arrest for carrying a concealed weapon without a permit. During the search of Trenado incident to his arrest, Sgt Calhoun located a Bank of America receipt evidencing an $8,000 deposit in Trenado's shirt pocket. Also found in Trenado's back pants pocket was a black wallet containing $7,135.00 of United States Currency and 500 Mexican Pesos. United States Currency totaling $462.00 was located in Trenado's front pants pocket. The total amount of United States Currency located in the cooler and the black bag recovered from the vehicle was $247,500.00.

14.     Based on your affiant's training and experience, your affiant is aware Trenado was arrested while traveling a route commonly used by illegal drug traffickers to transport illegal drugs as well as United States Currency acquired from the sale and distribution of illegal drugs. Further, the quantity of United States Currency and packaging materials located in the vehicle are indicative of drug trafficking and related activity.

## CONCLUSION

Based upon the foregoing and upon my training and experience, I submit there is probable cause to believe that United States Currency totaling $255,097.00 recovered from the person of Trenado Cruz and the vehicle he was operating on November 9, 2018, is subject to seizure and forfeiture to the United States pursuant to Title 18, United States Code, Section 981(b), by Title 21, United States Code 881(a) and 881(b), and Title 21, United States Code, Section 853(a) and (f), as property which constitutes property obtained, directly or indirectly as the result of violations of Title 21, United States Code, Sections 841 and 846.

I swear under penalty of perjury that the foregoing is true and correct.

Tyler Delashaw, Task Force Officer
Drug Enforcement Administration

Subscribed and sworn before me on November 16, 2018.

SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE